IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| DR. DEENA HASSABALLA, D.O., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:26-cv-195 |
| vs. | ) |
| | ) |
| SOUTHERN ILLINOIS MEDICAL | ) **Jury Demanded** |
| SERVICES, NFP and SOUTHERN | ) |
| ILLINOIS HOSPITAL SERVICES, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Dr. Deena Hassaballa, D.O., by and through her undersigned counsel, and, for her Complaint, states as follows:

### NATURE OF THE COMPLAINT

1. This action arises from Defendants' breach of contract and retaliatory and unlawful termination of Plaintiff Dr. Deena Hassaballa for engaging in protected whistleblowing, including advocacy regarding patient safety, regulatory compliance, and workplace conditions.

2. This civil action arises under the laws of the State of Illinois, and is brought for breach of contract and pursuant to the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1 *et seq.*, the Illinois Hospital Report Card Act, 210 Ill. Comp. Stat., 86/35, and the Illinois common-law wrongful termination tort.

### THE PARTIES

3. Dr. Hassaballa is a resident of Seattle, King County, Washington. Dr. Hassaballa was, at all relevant times, an employee or contracted staff of Defendants.

4. Defendant Southern Illinois Medical Services, NFP, is an Illinois not-for-profit corporation with its principal place of business at 1239 East Main Street, P.O. Box 3988, Carbondale, IL 62902. Its registered agent for service of process is John R. Daly, who may be served at 1239 East Main Street, Carbondale, IL 62901.

5. Defendant Southern Illinois Hospital Services is an Illinois not-for-profit corporation with its principal place of business at 1239 East Main Street, Carbondale, IL 62902. Its registered agent for service of process is John R. Daly, who may be served at 1239 East Main Street, Carbondale, IL 62901.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Dr. Hassaballa's claims pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to this lawsuit occurred in this judicial district and Defendants conduct business and employed Dr. Hassaballa in Williamson County, Illinois, which is located within this judicial district.

## FACTUAL BACKGROUND

8. Dr. Hassaballa is a physician specializing in Physical Medicine and Rehabilitation with focuses on Stroke and Traumatic Brain Injury.

9. Defendant Southern Illinois Medical Services, NFP ("Defendant SIMS"), owns or operates certain medical practices and has contracts to provide medical professionals to medical practices owned by other entities.

10. Defendant Southern Illinois Hospital Services ("Defendant SIHS") owns or operates certain hospitals in southern Illinois.

11. Dr. Hassaballa spent roughly ten years prior to June 2024 in academics, serving as faculty at prestigious institutions such as Northwestern University, the University of Washington, and Georgetown University, where she developed a stellar reputation and won awards with residents and medical students.

12. On or about June 17, 2024, Defendant SIHS contracted with a medical placement agency to hire Dr. Hassaballa as a "*locum tenens*," or temporary, physician to provide clinical coverage for ten weeks.

13. Dr. Hassaballa performed well enough that Defendants extended her assignment and requested to interview her for positions as an independent contractor physician with Defendant SIHS and medical director with Defendant SIMS.

14. Defendant SIHS entered an Agreement for Medical Director of Inpatient Rehabilitation (IRF) Program ("Medical Director Contract") with an effective date of November 24, 2024 "to obtain the medical services of [Dr. Hassaballa] to serve as Medical Director of the IRF Program at [Herrin] Hospital." *See* (Ex. A at 1).

15. The Medical Director Contract provided a term of two years unless terminated earlier for specified reasons. *See* (Ex. A at 4 ¶ 13(a)).

16. Termination of the Medical Director contract could occur by the hospital for a specified reason – including death of the physician, for cause due to breach of the agreement, revocation of the physician's Illinois medical license or prescription authority, exclusion from Medicare or Medicaid, habitual use of any substance, repeated negligence, refusal to perform the specified duties, loss of medical staff privileges, or failure to participate in treating the hospital's

patients – or "[b]y either party upon giving thirty (30) days advance written notice to the other party." *See* (Ex. A at 4-5 ¶ 13(b)).

17. The Medical Director Contract made clear that it could only be terminated after the completion of the thirty-day notice period by stating that "[a]ny termination of this Agreement for cause referenced in Section 13(b) above shall be effective only after thirty (30) days written notice specifying the reason for termination and the effective date of termination, and such reason for termination as specified in the notice has not been cured within such notice period," *see* (Ex. A at 5 ¶ 13(c)), and that only "[u]pon the effective date of any termination of this Agreement [will] the obligations of the Parties cease immediately. . . ." *See* (Ex. A at 5 ¶ 13(d)).

18. Dr. Hassaballa performed her duties as Medical Director well at all times.

19. Accordingly, in January 2025, Defendant SIMS entered an Independent Contractor Agreement with Dr. Hassaballa for Dr. Hassaballa to become an independent contractor of Defendant SIMS for the purpose of providing medical and health care services at hospitals owned by Defendant SIHS effective February 24, 2025. *See* (Ex. B at 2).

21. Though classified as an independent contractor by Defendant SIMS, Dr. Hassaballa still was responsible for complying with all applicable laws, including state laws, relating to a hospital medical practice as well as all policies of Defendant SIMS, *see* (Ex. B at 4 ¶ 2(c)), including Defendant SIHS's Code of Ethics and Conduct, which itself required Dr. Hassaballa to "[c]omply with all legal and regulatory requirements that are applicable to SIH and its operations." *See* (Ex. B at Ex. B at A-2 ¶ 13).

22. The Independent Contractor Agreement had a term of one year with annual renewals unless terminated by written notice at least thirty days prior to the end of the term. *See* (Ex. B at 11 ¶ 10(a)).

23. Either party could terminate the Independent Contractor Agreement "without cause" by giving thirty days prior written notice to the other party specifying the date of the termination. *See* (Ex. B at 12 ¶ 10(b)).

24. Defendant SIMS also had a right to terminate the Independent Contractor Agreement immediately, but only upon the occurrence of one of the following nine specified events: The physician acting illegally or in a manner detrimental to Defendants, being denied medical privileges, terminating billing arrangements with Defendants' billing company, losing a license to practice medicine in Illinois, being charged with or convicted of a felony, being disciplined by any medical organization or hospital, being excluded from or suspended from participating in Medicare or Medicaid, dying or becoming permanently disabled, or being denied professional liability coverage. *See* (Ex. B at 12 ¶ 10(d)).

25. Dr. Hassaballa performed her medical duties well at all times.

26. Dr. Hassaballa operated differently than her predecessors as Medical Director, however.

27. Dr. Hassaballa raised concerns about the lack of proper facilities and engaged to raise funds for better facilities.

28. Dr. Hassaballa also demanded terminations of employees, including managers, who lacked minimum requirements for their positions and who were just taking checks without putting in meaningful work, even threatening to quit if an incompetent manager was given a Performance Improvement Plan rather than termination.

29. Dr. Hassaballa also identified and raised concerns about multiple violations of hospital policies, patient safety issues, documentation standards in charting, and practices she believed posed risks to the health, safety, and welfare of patients and the public, including medical

negligence, discharge safety issues, and allowing patients to sign out against medical advice despite concerns about mental status without examination of competency.

30. Dr. Hassaballa reported her safety concerns through Defendant SIHS's safety system and addressed her concerns directly to administrators.

31. Dr. Hassaballa also tried to improve the safety and patient care practices by routinely sending updates from medical literature in emails to staff.

32. Dr. Hassaballa was nominated for two awards recognizing her exceptional performance during her short tenure with Defendants.

33. After ignoring or chastising Dr. Hassaballa for her reports of improper and/or unsafe practices, Defendants eventually decided to terminate Dr. Hassaballa.

34. On or about May 13, 2025, Dr. Hassaballa sent one of her routine email clinical updates, but, on this occasion, one of the articles she attached was a discussion from the Journal of the American Medical Association regarding the impact of unions in medical settings.

35. The next day, on or about May 14, 2025, an administrator and a Human Resources employee who had ignored Dr. Hassaballa's safety concerns ordered her to stop sending clinical updates to non-management workers.

36. Dr. Hassaballa agreed to the limitations on her distribution of clinical updates but, nevertheless, on May 19, 2025, the Human Resources employee removed Dr. Hassaballa from her patient rounds and took her to a meeting at which other administrators were present to tell her that she was being terminated "without cause."

37. Defendants provided letters stating they were terminating both her Medical Director Contract and her Independent Contractor Agreement pursuant to the without-cause provision of each contract. *See* (Exs. C, D).

38.     Since both contracts require a thirty-day written notice for a no-cause termination, both termination letters stated that Dr. Hassaballa's Agreements would "terminate and no longer be in effect as of June 19, 2025." *See* (Exs. C, D).

39.     Despite those statements and the associated contractual provisions, however, Defendants immediately marched Dr. Hassaballa out of the hospital and terminated her access to all electronic systems.

40.     Defendants did not even let Dr. Hassaballa gather her belongings from her office, and, instead, insisted on retrieving the belongings for her and shipping them to her home in Seattle, Washington, which they sent postage due.

41.     Dr. Hassaballa was not allowed to treat her patients during the thirty-day wind-down period provided in her contracts.

42.     Defendants' treatment of Dr. Hassaballa traumatized her such that she still suffers nightmares, and she has been unable to return to the in-patient care she had done throughout her career and had to take less intensive work.

43.     Dr. Hassaballa performed her job competently throughout her association with Defendants, and she did not violate any policies, practices, or standards or receive any discipline, whether formal or informal.

44.     Defendants' actions described in this Complaint were intentional, willful, deliberate, and malicious.

45.     As a direct, foreseeable, and proximate result of Defendants' wrongful actions, Dr. Hassaballa has suffered pecuniary losses in the form of lost income, as well as severe emotional distress, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses, all in an amount to be determined at trial.

## COUNT I

### BREACH OF CONTRACT

46. Dr. Hassaballa realleges and incorporates herein the allegations contained in Paragraphs 1 – 45 as if set forth fully herein.

47. Defendant SIMS entered the Medical Director Contract with Dr. Hassaballa. *See* (Ex. A).

48. Defendant SIHS entered the Independent Contractor Agreement with Dr. Hassaballa. *See* (Ex. B).

49. Dr. Hassaballa did not engage in any act or omission that would justify termination for cause pursuant to either contract.

50. Both contracts permit termination without cause only upon thirty days written notice.

51. Defendants notified Dr. Hassaballa of her termination without cause on May 19, 2025, stating pursuant to the terms of the contracts that each contract would "terminate and no longer be in effect as of June 19, 2025." *See* (Exs. C, D).

52. Defendants, however, immediately ended Dr. Hassaballa's access to her patients and the electronic systems necessary to perform her patient care and medical director duties.

53. Defendants' actions constitute breaches of the respective contracts.

54. Dr. Hassaballa has suffered damages as a result of Defendants' breaches.

## COUNT II

### VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT

55. Dr. Hassaballa realleges and incorporates herein the allegations contained in Paragraphs 1 – 54 as if set forth fully herein.

56. Defendants are "employers" pursuant to the Illinois Whistleblower Act. *See* 740 Ill. Comp. Stat. 174/5.

57. The Illinois Whistleblower Act's definition of "employee" includes "a licensed physician who practices his or her profession, in whole or in part, at a hospital, nursing home, clinic, or any medical facility that is a health care facility funded, in whole or in part, by the State." *See* 740 Ill. Comp. Stat. 174/5.

58. Defendants receive funding from the State of Illinois.

59. The Illinois Whistleblower Act prohibits employers from retaliating against an employee who discloses or threatens to disclose to a supervisor or a public body any activity, policy, or practice of the employer that the employee reasonably believes violates a law, rule, or regulation or creates a substantial and specific danger to public health or safety. *See* 740 Ill. Comp. Stat. 174/15.

60. Dr. Hassaballa repeatedly advocated for patient safety and identified negligent care, violations of clinical standards, and management deficiencies.

61. Defendants retaliated against Dr. Hassaballa and ultimately terminated her for her reports and efforts to reform the problematic behavior.

62. Defendants' violation of the Illinois Whistleblower Act was willful and knowingly committed.

63. As a direct and proximate result of Defendants' violation of the Illinois Whistleblower Act, Dr. Hassaballa was injured and suffered damages.

## COUNT III

## VIOLATION OF THE ILLINOIS HOSPITAL REPORT CARD ACT

64. Dr. Hassaballa realleges and incorporates herein the allegations contained in Paragraphs 1 – 63 as if set forth fully herein.

65. The Illinois Hospital Report Card Act prohibits hospitals from penalizing, discriminating against, or retaliating against employees who "object[] to or refuse[] to participate in any activity, policy, or practice of a hospital that violates this Act or any law or rule of the Department or that a reasonable person would believe poses a risk to the health, safety, or welfare of a patient or the public." *See* 210 Ill. Comp. Stat. 86/35(a)(3).

66. Dr. Hassaballa identified and disclosed management deficiencies and violations of clinical standards, submitted safety concerns through Defendant SIHS's safety system, and identified practices that posed risks to the health, safety, and welfare of patients.

67. These actions constituted activity protected by the Hospital Report Card Act.

68. The Hospital Report Card Act also protects employees who participate in a committee or peer review process or file a report or complaint that discusses allegations of unsafe, dangerous, or potentially dangerous care within the hospital. *See* 210 Ill. Comp. Stat. 86/35(a)(4).

69. Dr. Hassaballa's clinical communications, safety reports, and advocacy for better procedures, standards, and facilities constituted such activity protected by the Hospital Report Card Act.

70. Defendants' violation of the Illinois Hospital Report Card Act was willful and knowingly committed.

71. As a direct and proximate result of Defendants' violation of the Illinois Hospital Report Card Act, Dr. Hassaballa was injured and suffered damages.

## COUNT IV

## COMMON-LAW WRONGFUL TERMINATION

72. Dr. Hassaballa realleges and incorporates herein the allegations contained in Paragraphs 1 – 71 as if set forth fully herein.

73. The public policy of the State of Illinois requires compliance with standards of medical care and safety within medical facilities as well as the reporting of violations of such standards.

74. Dr. Hassaballa reported violations of the applicable standards of medical care and safety within medical settings.

75. Defendants retaliated against and terminated Dr. Hassaballa for advocating for proper standards of medical care and safety within the medical setting.

76. Defendants' retaliation against and termination of Dr. Hassaballa was willful and knowingly committed.

77. As a direct and proximate result of Defendants' illegal retaliation, Dr. Hassaballa was injured and suffered damages.

78. Dr. Hassaballa has sustained a loss of back pay, incidental expenses, and front pay.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. That Defendants be served and required to answer within the time prescribed by law;

2. That a jury of twelve try this cause;

3. That, upon the trial of this matter, Plaintiff be awarded judgment for damages of the lost compensation she has suffered from the date of Defendants' unlawful actions in an amount to be proven at trial;

4. That the Court issue an award of front pay in an amount to be proven at trial in lieu of reinstatement because the actions described herein and the circumstances surrounding the place of employment have made reinstatement impossible;

5. That the Plaintiff be awarded damages for emotional distress, pain, and suffering in an amount to be proven at trial, pursuant to Counts II – IV;

6. That the Plaintiff be awarded liquidated damages of $10,000 for Count II pursuant to 740 Ill. Comp. Stat. 174/30(4);

7. That the Plaintiff be awarded punitive damages in an amount to be determined at trial pursuant to Count IV;

8. That costs and discretionary costs be taxed against Defendant;

9. That attorneys' fees be assessed against Defendant for Count II pursuant to 740 Ill. Comp. Stat. § 174/30(5);

10. That pre-judgment and post-judgment interest be assessed against Defendant, as provided by law;

11. That such other remedies as shall be necessary and proper to eliminate all violations complained of herein be awarded as provided by law; and

12. For such other and further relief as the Court may find appropriate.

Respectfully submitted,

s/ D. Wes Sullenger
D. Wes Sullenger, IL ARDC # 6322019
   KY BAR # 91861
   TN BPR # 021714

Sullenger Law Office, PLLC
2508 Jackson Street
Paducah, KY  42003
Voice: (270) 443-9401

wes@sullengerfirm.com

*Attorney for the Plaintiff,*
*Dr. Deena Hassaballa, D.O.*